# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| NANETTE SEMBACH, | ) | 3:10-cv-00654-LRH-VPC |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| CLUB ONE; and MILES METTLER, general manager of CLUB ONE, | ) | |
| Defendant(s) | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 626(b)(1)(BB), LR 1B 1-4 and LR 16-6 (Doc. # 59). An early neutral evaluation conference was conducted by the court on June 12, 2012. Before the court is Defendants' motion to enforce settlement agreement (Doc. # 70) and Plaintiff's "Evideniary Hearing" (sic) (Doc. # 72). An evidentiary hearing was conducted on Monday, November 26, 2012. (Minutes, Doc. # 72.) After a thorough review, the court recommends that Defendants' motion (Doc. # 70) be granted.

## I. BACKGROUND

Plaintiffs' claims arise from her employment as a trainer at Defendant Club One's facility in Reno, Nevada. Plaintiff's Second Amended Complaint (Doc. # 48). Plaintiff alleged that while working, she injured her shoulder and as a result, she filed two workers compensation claims. She averred that in retaliation, "her responsibilities were taken away and given to a younger man." (*Id.*, at 9.) Plaintiff's cause of action is predicated upon "Title VII and ADEA." (*Id.*)

An early neutral evaluation (ENE) session was conducted by this court on June 12, 2012.

1   Following court-directed negotiations at the ENE, the parties advised the court they had agreed to
2   settle the case.  The terms of the agreement were stated for the record, the recording of which
3   proceeding was sealed. (Doc. # 65.)  Counsel for Defendants was to prepare a settlement agreement
4   and a stipulation dismissing this action was to be submitted within fifteen days.  (Doc. # 63.)[1]

5   Because no stipulation for dismissal had been timely filed, the court on August 24, 2012,
6   scheduled a status conference regarding settlement for September 18, 2012.  (Doc. # 66.)  During the
7   hearing, the court and parties met privately, after which the parties agreed to submit the required
8   dismissal documents to the court in a timely manner. (Doc. # 68.)  However, because the appropriate
9   dismissal documents still had not been filed "in a timely manner," the court ordered another hearing
10  be conducted on October 25, 2012, concerning the status of settlement.  (Doc. # 69.)

11  At the October 25, 2012 hearing, the court was advised that the problem with finalizing
12  settlement in this action arose from whether Defendants may issue IRS form 1099 with respect to the
13  payment of the settlement consideration in this matter.[2]  The court indicated, therefore, it would
14  schedule an evidentiary hearing with respect to the 1099 issue.  Counsel for Defendants represented
15  Defendants would file a motion to enforce the settlement agreement and plaintiff was directed to file
16  a response thereto.

17  The court scheduled an evidentiary hearing for Monday, November 26, 2012, (Doc. # 71).
18  Thereafter, Defendants filed a motion to enforce settlement agreement (Doc. # 70) to which Plaintiff
19  filed a response (Doc. # 72, "Evideniary Hearing") (sic).  In Plaintiff's response, Plaintiff identified
20  an additional issue with respect to settlement, i.e., whether the parties agreed to characterize Plaintiff's
21  departure from employment as a "resignation" or another description of separation of employment.
22  (Doc. # 72 at 2-3.)

23  At the evidentiary hearing on November 26, 2012, in addition to receiving presentations by

---

[1] Plaintiff was proceeding *pro se*.  The court considered Plaintiff to be competent and able to represent herself in these proceedings.

[2] The Plaintiff was contending the parties agreed not to issue a 1099 with regard to the settlement; Defendants were asserting there was no agreement to that effect and that Defendants are required by law do to so in any event.  The 1099 issue is discussed further herein at pp. 5-7.

2

Plaintiff and Defendants, the court also received input from Dan McGuire, Esq., a shareholder of Defendants' counsel's law firm of Lionel, Sawyer and Collins, regarding "advice on the tax implication of Club One's settlement payment to Plaintiff Nanette Sembach." (Doc. # 70-1 at 1.) Mr. McGuire represented himself as being a tax attorney. In addition to his declaration which accompanied Defendants' motion (*id*.), Mr. McGuire provided testimony that Defendant Club One was required under the IRS Code to report the settlement payment via form 1099-MISC. The gravamen of Mr. McGuire's opinion was that while damages arising from emotional distress secondary to physical injuries are not taxable and thus not reportable, where physical injuries are not sustained, or where the alleged physical injury was not a significant part of the claim, any damages for non-physical injuries or sickness (i.e., emotional distress) are required to be reported in Box 3 of Form 1099. His conclusion was Club One would therefore be required to report the settlement herein to the IRS. He did not provide any opinion as to whether Plaintiff would or would not incur any tax liability as a result of the settlement; just that it was a reportable event. More details of the "1099 dispute" are set forth *infra* at pages 5-7.

## II. LEGAL STANDARD

The court has inherent authority under federal law to enforce a settlement agreement in an action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *TNT Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (citations omitted); *see also Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998) (citations omitted). A settlement agreement must meet two requirements to be enforced. First, it must be a complete agreement. *Callie*, 829 F.2d at 890. Second, both parties or their authorized attorneys must agree to the terms of the settlement. *See Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1144-45 (9th Cir. 1977). If a party gives his or her attorney express permission to enter a settlement agreement, the attorney may do so. *Id.*, at 1145. Where material facts concerning the terms or existence of settlement agreement are disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890.

"[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," even if the underlying cause of action

3

is federal. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 832 (9th Cir. 2004) (internal quotation marks and citations omitted) (applying Oregon law); *United Comm. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (applying California law); *Jeff. D. v. Andrus*, 899 F.2d 753, 769 (9th Cir. 1989) (applying Idaho law); *Turnberry Pavillion Partners, L.P. v. M.J. Dean Constr., Inc.*, 2009 WL 905055, at *3 (D. Nev. 2009) (applying Nevada law), *reversed on other grounds*, 378 Fed.Appx. 758 (9th Cir. 2010) (finding that Nevada law governed interpretation of the contract).

For a contract to be enforceable, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Where essential terms of a proposal are accepted with qualifications, or not at all, there is no agreement. *Heffern v. Vernarecci*, 92 Nev. 68, 70, 544 P.2d 1197 (1976). In Nevada, contract interpretation is a legal issue determined by the court. *Sheehan & Sheehan v. Nelson Malley and Co.*, 121 Nev. 481, 117 P.3d 219, 223 (2005); *Canfora v. Coast Hotels and Casinos, Inc.*, 121 Nev. 771, 121 P.3d 599, 603 (2005) (per curiam).

### III. ANALYSIS

Defendants' motion states that at the ENE,

> "the parties reached a settlement and the terms were placed on the record in court. The agreement of the parties, as confirmed by the written transcript (Doc. # 65), requires a payment to Plaintiff in exchange for a dismissal of the case with prejudice, and sets forth further understandings between the parties as to Plaintiff's separation from Club One, and the contents of her personnel file. There is no disagreement about these terms."

(Doc. #70 at 2.)

Plaintiff in her response does not specifically state that the parties had reached a settlement at the ENE, but instead asserted certain terms in a proposed "Confidential Settlement and General Release Agreement" were still in dispute. (Doc. # 72.) Although the transcript of the proceedings concerning the ENE settlement was sealed, without revealing the confidential terms, certain portions of the transcript are relevant and may be discussed herein, as they were in the parties' memoranda. These terms are not necessarily confidential to the issue of whether the parties intended to be bound by the terms of the agreement placed on the record or whether they intended to be bound upon the

4

1 *subsequent* execution of a "written signed agreement." This is a factual issue for the court to determine. *Callie*, *supra*, 829 F.2d at 890-91. In that respect, the transcript of proceedings reflect the court advised the parties that the settlement agreement which would be placed on the record would become a binding agreement and that

> "it will become a binding contract; meaning that if anyone backs out of this tomorrow morning, somebody, if they want, can move to enforce the settlement agreement."

(Doc. # 65 at 3.)

After confirming the parties acknowledged they were entering into a binding agreement, the terms of the settlement agreement were recited by counsel for Defendant (Doc. # 65, at 4-6). The Plaintiff, Defendants' representative and Defendants' counsel indicated acceptance of the terms of the settlement agreement and responded affirmatively to the court's question that "do you also both understand that what we say and put on the record here today reflects a binding settlement agreement?" (*Id.*, at 6).

As such, the court concludes that an enforceable contract was entered into between the parties on June 12, 2012, and that there was a meeting of the minds as to all material terms at that time. However, the court will turn to a discussion of the two points of contention which have delayed implementation of the settlement herein.

**A. Issuance of Form 1099**

As recited above, Defendants take the position that while emotional distress arising from physical injuries are not reportable, if there is no physical injury, or if the emotional injury did not arise out of the alleged physical injury, IRS Code requires Defendants to report the settlement under form 1099. More specifically, because the emotional distress did not arise from a physical injury herein, Defendants allege form 1099 must issue. Plaintiff Sembach acknowledges "emotional distress is not considered a physical injury or physical sickness," (Doc. # 72 at 6) and further recognizes only emotional distress damages attributable to a physical injury or physical sickness are excluded from income under Sec. 104(a)(2)." (Doc. # 72 at 13.) Plaintiff made somewhat of an obtuse and confusing argument about suffering some type of physical injuries, but it appears these "injuries" arose, if at all,

5

after the discrimination which is the subject of this action.

One of the exhibits Plaintiff submitted supports this position, including a statement made by Plaintiff Sembach's certified public accountant H. Cameron Williams, Jr., that

> "Damages received on account of personal injury that are not physical injuries such as discrimination, breach of promise, invasion of privacy, libel, slander, defamation, harassment, will be considered taxable in the year received."

(Doc. # 72 at 13.)

Therefore, if the court were specifically presented with the issue of whether Defendants would be required to report this settlement to the IRS, the court would likely conclude that the Code requires this settlement to be so reported, even if it is solely characterized as compensation for "emotional distress," as the parties agreed to do. (Doc. # 65 at 7). However, the issue before the court is *not* whether the settlement is reportable; instead, the issue is whether the terms of the settlement agreement addressed the question of whether a form 1099 would or would not be issued by Defendants. In that regard, the parties agreed that the settlement payment would be "characterized in the release as compensation for personal or emotional injuries and not for reimbursement of income." (Transcript, Doc. # 65 at 6-7.) Counsel for Defendants continued to state that "whether or not there are any tax consequences resulting from that payment is something that is a matter between Ms. Sembach, her CPA and the IRS. But we will characterize it in that matter (sic)." (*Id.*, at 7.)

At the conclusion of the ENE, the court asked Ms. Sembach whether "there are any other terms and conditions that you want to state on the record that pertain to the settlement agreement?" Ms. Sembach responded, "No. I think we've covered everything." Counsel for Defendants agreed. (*Id.*, at 12.) Additionally, at the November 26, 2012 hearing, the court queried counsel for Defendant Leslie Bryan Hart and Plaintiff Sembach whether any of the settlement discussions *preceding* the formal placement of the settlement on the record addressed the 1099 issue. Each individual represented to the court that there were also no discussions about whether Defendant Club One would or would not file a 1099 with respect to this settlement.

Thus, with respect to the 1099 issue, the court reports and recommends that the court find that the parties reached a "complete settlement agreement." No material terms remain uncertain. In

*Liberty Media Holdings, LLC v. F.F. Magnat, Limited*, 2012 WL 3255044 (8/7/12), District Judge Gloria M. Navarro was faced with a similar issue arising from a party's motion to enforce a settlement agreement. Judge Navarro noted that because a settlement agreement is a contract, "its construction and enforcement are governed by principles of contract law." (*Id.*, at 2, citing *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). "A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." (*Id.*)

"In the case of a settlement agreement, a court cannot compel compliance when material terms remain uncertain." *May v. Anderson*, 119 P.3d at 1257. Whether a contract exists is one of fact and a settlement agreement can only be enforced if the court is able to ascertain what is required of the respective parties. (*Id.*) In that regard, quoting from *Tropicana Hotel Corporation v. Speer*, 692 P.2d 499, 502 (Nev. 1985), Judge Navarro stated "the evidence that the parties intended to be presently bound must be convincing and subject no other reasonable interpretation."

In the instant matter, there can be no conclusion other than that plaintiff clearly assented to the terms of the settlement agreement based not only upon the transcript of proceedings where the terms were recited, but that evidence produced at the evidentiary hearing as well. This evidence is unequivocal that whether a form 1099 would or would not be issued was <u>not</u> a term of the settlement agreement. Where there is such "clear assent," there is a meeting of the minds giving rise to a contractual agreement. *Mack v. Estate Mack*, 206 P.3d 98, 108 (Nev. 2009). Accordingly, the court recommends compelling compliance because there are no uncertain material terms that pertain to the 1099 issue.

**B. Characterization of Separation of Employment**

Although not addressed by Defendants in their motion, Plaintiff in her response objected to characterization of her separation of employment as her having "resigned from her position. Ms. Sembach stated that she never signed nor provided the Defendants with a letter of resignation." (Doc. # 72 at 2.)

Plaintiff's contention in this regard is contradicted by the transcript relating to the "binding settlement agreement" to which the parties agreed. (Doc. # 65 at 6.) At the ENE hearing, the court

inquired about the language Plaintiff requested be inserted into her personnel file relative to the nature of the severance of employment with Club One. Counsel for Defendants stated that

> "the settlement will reflect that Ms. Sembach will resign her employment from Club One. She will acknowledge that she is not eligible for rehire. And her personnel file will include a statement to the effect of her resignation was as a result of a work-related injury, and that upon her doctor's advice to her she ceased her employment."

(*Id*., at 10.)

The court asked Ms. Sembach whether she understood that and she responded, "I do." However, Ms. Sembach did have a question as to the ineligibility for rehire, stating "that's a mark against my work record." Counsel for Defendants stated "the settlement agreement will reflect that she is not eligible for rehire. I think the statement in her personnel file will be that she voluntarily resigned as a result of a work-related injury." Ms. Sembach responded, "Okay." (*Id*.) The court reconfirmed that the settlement agreement and Plaintiff's personnel file would reflect that "she's not eligible for rehire," stating that this would be a "contractual term between the two of you." Ms. Sembach was asked whether she understood that and she responded, "yes." The court again asked "and all those terms as explained, are acceptable to you," Ms. Sembach responded, "Yes, they are."

Therefore, with respect to the characterization of Plaintiff's employment separation, it is clear that the parties agreed that Plaintiff's personnel records would reflect Ms. Sembach resigned (or was going to resign) her employment with Defendants, with the further notation she is not eligible for rehire.

Subsequent to the court's discussion of this particular issue with the parties, counsel for Defendants stated she would confer with her clients to ascertain whether there might be an alternative method to characterize Plaintiff's separation other than "resignation." Because the settlement agreement was clear that Plaintiff's severance would be described as a "resignation," the court cannot require that the severance be characterized any differently. However, if Plaintiff and Defendants can reach agreement as to alternative phrasing, the parties are certainly within their power to do so. (Doc. # 73.)

///

## IV. CONCLUSION

In conclusion, the court finds that the parties entered into a complete settlement agreement and that the parties, or their authorized agents, agreed to the terms of the agreement. Since there was no discussion, let alone any agreement, that a form 1099 would or would not be issued with respect to this settlement, such a term should not be imposed on the parties. Neither should the characterization of Plaintiff's separation from employment (i.e., "resignation") be revised unless the parties informally agree to do so. Accordingly, the settlement agreement should be enforced. Plaintiff should execute a stipulation for dismissal of this action pursuant to the terms of the agreement. If she declines to do so, an order to that effect would be appropriate.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Defendants' motion (Doc. # 70).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: December 3, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE